THE MANRESA INSTITUTE AND ANOTHER *vs.* THE TOWN
OF NORWALK.

New Haven & Fairfield Cos., Oct. T., 1891.   ANDREWS, C. J., CARPEN-
TER, SEYMOUR, TORRANCE and FENN, Js.

Section 3820 of the Gen. Statutes exempts from taxation "buildings belong-
ing to and used exclusively for ecclesiastical societies."   An island
within the defendant town containing fifty acres and having upon it a
mansion house, two cottages and a chapel devoted to religious uses,
was equitably owned by the Manresa Institute, a corporation of the
state of New York, which was established for the purpose of educating
young men for the priesthood.   The institute was a branch of the So-
ciety of Jesus, and the place was used as the country house of three col-

leges of that society, the professors of which were accustomed to go there in the summer vacation for rest, at the same time practising certain prescribed religious exercises. When they were not there the place was in charge of one of the fathers and a few lay members of the society and was used as a retreat for priests and laymen who desired seclusion and the direction of the members of the society. Held that the property did not come within the exemption from taxation provided by the statute. .

The ecclesiastical societies intended by the statute are local in their nature, are organized under our laws, and are connected with some church organization.

Even if the property might be regarded as belonging to an ecclesiastical society, yet it was not " exclusively used " for the purposes of such a society.

The property in question was upon the public records owned absolutely by C, one of the plaintiffs. He however held it in fact for the Manresa Institute. Whether this was a sufficient owning of the property by the institute under the statute:—*Quære.*

The exemption by the statute is only of buildings, which would include only so much land as would ordinarily go with buildings. The exemption of the entire property was claimed here. Whether some part of it might not be exempt:—*Quære.*

[Argued October 30th—decided December 19th, 1891.]

APPLICATION for relief from an assessment for taxation by the defendant town; brought to the Superior Court in Fairfield County and tried to the court before *Thayer, J.* Facts found and judgment rendered for the defendant, and appeal by the plaintiffs. The case is fully stated in the opinion.

*J. S. Seymour*, for the appellants.

*L. Warner*, for the appellee.

CARPENTER, J. This is an application in the nature of an appeal from the doings of the board of relief in refusing to exempt from taxation certain real estate lying in the defendant town. The land in question is an island, comprising about fifty acres, and connected with the main-land by a bridge and causeway, and on it stand a mansion house, two cottages and outbuildings, and a chapel devoted to religious uses. The town authorities subjected the premises

to taxation, and the Superior Court on this appeal confirmed their action. The appellants appealed to this court.

There are in form three grounds or reasons of appeal, but there is in reality but one question, at least the answer to one question will practically dispose of the case :—Is the property in question exempt from taxation under § 3820 of the General Statutes? Among the exemptions named in that section is the following :—" Buildings belonging to and used exclusively for scientific, literary, benevolent or ecclesiastical societies, not including any real estate conveyed by any ecclesiastical society or public or charitable institution without reserving an annual income or rent or by a conveyance intended to be a perpetual alienation, and not including any real estate of any educational, benevolent or ecclesiastical corporation or association, whether held in the name of such corporation or association or by any person or persons in trust for such corporation or association, and which is leased or used for other purposes than the specific purposes of such corporation or association, nor including lands granted and given for the maintenance of the ministry of the gospel while leased."

The property stands on the records of the town in the name of Thomas J. Campbell, who is joint plaintiff; but he claims to hold simply the naked legal title in trust for the Manresa Institute, and that soon after he purchased the premises he executed a deed of the same to the Manresa Institute. That deed was never recorded, and not otherwise delivered than that, with the knowledge and consent of the trustees, of whom Campbell was one, he deposited it in his safe in New York, where it now remains. It also appears that the beneficial interest in the property is solely in that corporation. That is a corporation organized under the laws of the state of New York, and is located in that state. It is found " that the particular business and objects for which said corporation is formed are to educate young men for the priesthood, and to give them a thorough theological and scientific course of study."

We are not prepared to hold that this corporation, or the

Manresa Institute v. Town of Norwalk.

Society of Jesus, of which it is a part, is an ecclesiastical society within the meaning of our statute. The ecclesiastical societies contemplated by the statute are local in their nature, and are such as are organized under our law and located here. They are connected with some church organization, organized for the public worship of God. But however this may be, the language of the statute applies only to buildings, and excludes land from the exemption, except such as usually goes with buildings. Here are fifty acres of land, twelve of which are upland, a part of which is cultivated as a garden. In the reasons of appeal other terms of the statute, "literary, scientific, benevolent," are used, yet the plaintiffs' counsel does not in his brief claim under those words, but bases his claim to exemption wholly on the ground that the Manresa Institute and the Society of Jesus are ecclesiastical societies.

Even if we were to hold that the Manresa Institute and the Society of Jesus are ecclesiastical societies within the meaning of the statute, still the exemption must fail. The statute is explicit that the property must be "used exclusively for scientific, literary, benevolent or ecclesiastical societies." The finding is that it is "used as the villa or country house of three colleges of the Society of Jesus. That is, the professors of those colleges go there to spend their time when they are in villa, as it is called, or on vacation in summer. During this time they are subject to the rules of the Society of Jesus the same as when in their city homes or in the colleges and as they are at all times; but when they are in villa a little relaxation is given to the strictness of the rules. They study here and practice certain religious exercises, arranged according to the study of what is called ascetic theology. These respective houses are taxed a certain amount to pay the running expenses of the villa. The colleges above referred to are St. John's, Fordham; St. Francis Xavier, New York; and St. Peter's, New Jersey. When these professors are not there, the premises are used as a house of retreat or seclusion for priests or laymen who may choose to go there for seclusion and direction by members of the Society of Jesus. During this time it is in charge of

one of the fathers and two or three lay members of the society, subject to the direction of the provincial. The period of seclusion or retreat of persons going there varies from three to eight days."

Thus it seems to be a place of resort for a certain privileged class, in the usual vacation periods, for purposes of rest and recreation. Although the persons resorting thither enjoy certain religious privileges and are subjected to certain rules and regulations of an ecclesiastical nature, yet the organizations, the people who control them, and the people who are affected by them, bear very little resemblance to ecclesiastical societies as they exist and are understood in this state and the people connected with them. The latter in the main exist for managing the secular affairs of the churches. The former seem to have for their object the spiritual welfare of their members and others who may be brought within their influence. The two classes are hardly to be compared with each other. The property in question is used rather for the temporal wants of the members of the Society of Jesus, than for instructing and educating young men for the priesthood. It resembles club houses in that it is designed chiefly for the recreation of its members. Therefore we say that the property is not used exclusively for the purposes contemplated by the statute.

Another statutory requisite is, that the property shall belong to the ecclesiastical society. The language is, " buildings belonging to and used exclusively for . . . . . ecclesiastical societies." On the town records, not only the legal title, but the equitable title as well, is in Thomas J. Campbell. Upon evidence *dehors* the record it is clearly found that the sole beneficial interest is in the Manresa Institute. But is that sufficient? Ought not the trust, and the interest of the *cestui que trust*, to appear of record? The statute, with few exceptions, is particular to require that the property shall be assessed to the person holding the title to it as it appears on the record. As the unqualified record title is in Campbell, are the assessors and boards of relief bound to accept parol evidence that the real title is in another, and

that it is in fact used for purposes and by parties which entitle it to exemption? Do not the spirit of the statute and sound policy unite in requiring that the true state of the title shall appear upon the record? If not, and it may be shown by parol that any property is in equity owned by other parties, and is in fact used for purposes which exempt it from taxation, is not a wide door open for fraud and imposition? As it is unnecessary to decide this point we allude to it merely for the purpose of suggesting a *quære*.

The question whether a *part* of the property is exempt is not before us, although stated in the third reason of appeal. The entire argument of the plaintiffs is devoted to the question whether it is all exempt. It does not appear that a question as to a part was made in the court below. On the contrary, the statement in the finding is explicit that " the sole question raised upon the trial was, whether the premises in question were exempt from taxation as belonging to and being used exclusively by an ecclesiastical society. The plaintiffs claimed and asked the court to rule that the premises in question were so exempt. The court did not so rule."

There is no error in the judgment appealed from.

In this opinion the other judges concurred.