## The Town of Huntington *vs.* Swedish Baptist Home of Rest.

Third Judicial District, Bridgeport, April Term, 1916.

Prentice, C. J., Thayer, Roraback, Wheeler and Beach, Js.

Chapter 44 of the Public Acts of 1913 exempts from taxation "buildings or portions of buildings exclusively occupied as . . . infirmaries," and "buildings belonging to and used exclusively for scientific, literary, benevolent or ecclesiastical societies." *Held* that buildings owned by a foreign corporation and used as "a home of rest for tired-out and over-worked persons in need of temporary rest and recreation," as authorized by its charter, and at apparently remunerative rates for their board and lodging, constituted what was practically a health resort and were not entitled to exemption from taxation under either clause of the statute.

Argued April 13th—decided June 2d, 1916.

Action to foreclose a tax lien, brought to and reserved by the Court of Common Pleas in Fairfield County, *Scott, J.*, upon an agreed statement of facts, for the advice of this court. *Judgment advised for the plaintiff.*

It appears from the statement that the defendant is a New York corporation whose corporate purpose is expressed in its charter as follows: "The purpose of the association shall be to found and maintain a Home of Rest for tired-out and over-worked persons, who are in need of temporary rest and recreation; and also to provide a permanent home for old and

infirm members of the Swedish Baptist denomination, or for other worthy persons." The defendant is the owner of certain lands and buildings thereon, situated in the town of Huntington, of the assessed value of $11,500 and its buildings are used for the following purposes: (a) For permanent inmates to the Home, who upon entrance pay the sum of $300, if between the ages of sixty and seventy years, and $250, if seventy years of age or over. (b) During the summer season Swedish men and Swedish girls from New York who are ordinarily employed in New York, are taken as boarders at the rate of $6 or $7 per week each, according to the location of the room.

The total income for the fiscal year ending March 31st, 1914, was $4,052.17; and the total expenses were $4,025.92. The total receipts for the year were as follows: Subscriptions and donations by Swedish Baptist Churches and individuals, $1,617.22
By the annual fair, 316.91
By boarders during the summer season, 2,118.60

Total, $4,052.73
During the months of June, July, August and September the average number of boarders was seventy-one.

The claim is that the defendant is a corporation formed for benevolent and charitable purposes, and that the property in question is exempt from taxation because it is owned and occupied by the society exclusively for benevolent, charitable and infirmary purposes.

*John B. Dillon* and *Joseph G. Shapiro,* for the plaintiff.

*Edward K. Nicholson,* for the defendant.

BEACH, J. The only provisions of chapter 44 of the Public Acts of 1913 (p. 1654) under which the property

of the defendant can be claimed to be exempt, are those which exempt "buildings or portions of buildings exclusively occupied as colleges, academies, churches, public schoolhouses, or infirmaries with the land appurtenant to such infirmaries," and "buildings belonging to and used exclusively for scientific, literary, benevolent, or ecclesiastical societies."

It is quite clear that these buildings are not exclusively occupied as infirmaries. They were in substantial part used, in accordance with the corporate purposes of the institution, as "a home of rest for tired-out and over-worked persons, who are in need of temporary rest and recreation," and who paid for their board and lodging at rates which, so far as this record shows, were remunerative. To that extent the buildings were used as a health resort.

Neither can it be said that these were "buildings belonging to and used exclusively for scientific, literary, benevolent, or ecclesiastical societies." The case of *Manresa Institute* v. *Norwalk*, 61 Conn. 228, 23 Atl. 1088, is conclusive upon that point. In that case the land and buildings in question belonged to a corporation organized under the laws of the State of New York, and they were used as a place of retreat for priests or laymen who went there for seclusion and direction by members of the Society of Jesus. We said, p. 232: "Although the persons resorting thither enjoy certain religious privileges and are subject to certain rules and regulations of an ecclesiastical nature, yet the organizations, the people who control them, and the people who are affected by them, bear very little resemblance to ecclesiastical societies as they exist and are understood in this State and the people connected with them. The latter in the main exist for managing the secular affairs of the churches. The former seem to have for their object the spiritual welfare of their members and

others who may be brought within their influence. The two classes are hardly to be compared with each other. The property in question is used rather for the temporal wants of the members of the Society of Jesus, than for instructing and educating young men for the priesthood. It resembles a clubhouse in that it is designed chiefly for the recreation of its members. Therefore we say that the property is not used exclusively for the purposes contemplated by the statute."

This language is applicable to the buildings claimed to be exempt in this case. The defendant, in so far as it maintains a "Home of Rest for tired-out and overworked persons, who are in need of temporary rest and recreation," is not a benevolent or ecclesiastical society within the meaning of our statute; nor is the property in question used exclusively for benevolent or ecclesiastical purposes.

The Court of Common Pleas is advised to render judgment for the plaintiff.

In this opinion the other judges concurred.